OLD REPUBLIC INSURANCE COMPA-
NY, Peerless Insurance Company and
Insurance Company of North America,
Plaintiffs,

v.

Winston E. PITMAN, District Director of
Customs, Miami, Florida; George J.
McManus, District Director of Customs,
Savannah, Georgia; Robert N. Battard,
Regional Commissioner of Customs, Mi-
ami, Florida; and the United States
Customs Service, Defendants.

Court No. 81–7–00891.

United States Court of International
Trade.

Aug. 7, 1981.

**1226**

Sandler & Travis, Miami, Fla. (Gilbert Lee Sandler and Robert I. Targ, Miami, Fla., of counsel), for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C. (Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, New York City, Jerry P. Wiskin, Trial Atty., New York City), for defendants.

Barry H. Nemmers, Staff Atty., New York City, for American Importers Ass'n, amicus curiae.

Tompkins & Davidson, New York City (Norman C. Schwartz, New York City, of counsel), for National Customs Brokers & Forwarders Ass'n of America, Inc., amicus curiae.

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DEFENDANTS' CROSS–MOTION TO DISMISS

RICHARDSON, Judge:

This is an action to review decisions of the District Director of Customs, Miami, Florida, the District Director of Customs, Savannah, Georgia and the Regional Commissioner of Customs, Miami, Florida, refusing to honor bonds issued by plaintiffs' surety companies in conjunction with entries of merchandise into the United States through the Miami and Savannah Customs Districts, without a notice and revocation proceeding described in 31 Code of Federal Regulations (CFR) Section 223.17.

On Monday, July 13, 1981 the District Director of Customs at Miami sent letters to plaintiffs Old Republic Insurance Company and Peerless Insurance Company, and the District Director of Customs of Savannah, Georgia sent an identical letter to plaintiff Insurance Company of North America informing said plaintiffs that:

"The continued disregard of our request for payment on outstanding claims for which you are liable leaves us no alternative but to reject your surety bond on entries filed in this district . . . .

This notice will be effective immediately."

Identical letters were sent to eight other insurance companies.

Plaintiffs are on the approved list of sureties issued by the Secretary of the Treasury July 1, 1981, and the rejection of their bonds by the said District Directors, on July 13, 1981, was the first time the Customs Service had undertaken to collect its revenue from alleged delinquent accounts by refusing to honor a customs bond approved by the Secretary of the Treasury.

In response to the rejection of their bonds the plaintiffs, Old Republic Insurance Company and Peerless Insurance Company filed a motion for a Temporary Restraining Order and Application for Preliminary Injunction in the United States Court of International Trade which was heard by the Court in New York, July 16, 1981. After hearing plaintiffs' counsel in support of said motion and application, and the defendants' counsel in opposition at 10:00 A.M. on July 16, 1981, the Court on the same day at 4:30 P.M. granted the plaintiffs' motion for a Temporary Restraining Order for ten days, and ordered the defendants to show cause before the Court on July 27, 1981 at 10:30 o'clock, A.M., why a preliminary injunction should not issue.

Since this Court granted the Temporary Restraining Order against Robert N.

Battard, Regional Commissioner of Customs and Winston N. Pitman, District Director of Customs at Miami, Florida, July 16, 1981, the Regional Commissioner, on July 24, 1981, notified the ten affected surety companies within the Miami Region that "the U.S. Customs Service will not take any action to reject surety bonds pending the outcome of a final decision issued by the Court of International Trade." This representation to the sureties does not render the question on injunctive relief moot, inasmuch as the Regional Commissioner still claims authority to reject bonds. A moot question is not one that ebbs and flows as the tide, but one that does not present the possibility of a recurrence. Also, the Miami situation has had repercussions in ports in other regions not under Commissioner Battard's jurisdiction, including New York City, San Francisco, California, and Union, New Jersey; and plaintiffs furnish surety bonds in a number of ports throughout the United States.

Also, on July 24, 1981, plaintiffs filed a Motion to Change Place of Hearing from New York, N.Y. to Miami, Florida, and the defendants responded that they had no opposition to a changed place of hearing, but requested that the Temporary Restraining Order be extended ten days from July 27, 1981 to August 6, 1981.

Chief Judge Edward D. Re, in accordance with 28 U.S.C. § 253(b) and 256(a) and Rule 77(c)(2) of the Rules of the United States Court of International Trade, designated Miami, Florida as the place of hearing on the motion for a Preliminary Injunction on August 6, 1981.

Plaintiff's pending Motion to Amend its Verified Complaint to include Insurance Company of North America as a party plaintiff, as it had received a bond rejection letter from George J. McManus, District Director of Customs at Savannah, Georgia; and to join said District Director as a party defendant, was granted over defendants' objection, before the hearing on the motion to grant a Preliminary Injunction began.

After the commencement of the hearing on the Motion for a Preliminary Injunction, the Court inquired of counsel if there was any objection to consolidating the hearing with a trial on the merits in accordance with Rule 65(a)(2). Counsel for plaintiffs agreed to do so, but since counsel for defendants stated that he was opposed, as he was not prepared for a trial on the merits, the Court did not order a consolidation.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of the above-styled cause pursuant to 28 U.S.C. § 1581(i)(4).

The Plaintiffs are entitled to bring the above-styled cause pursuant to 28 U.S.C. § 2631(i).

This Court is empowered pursuant to 28 U.S.C. § 2643(c)(1) to grant the relief requested by the Plaintiffs.

## PRELIMINARY INJUNCTION

Have the plaintiffs made the requisite showing for the issuance of a preliminary injunction?

The factual information pertinent to plaintiffs' motion for a preliminary injunction is set forth in their Amended Verified Complaint and the evidence adduced at the hearing on the Motion for a Preliminary Injunction, August 6, 1981.

Plaintiffs contend that as a result of defendants' rejection of their bonds they were barred from writing any new single entry bonds in the Miami and Savannah Districts and thus were virtually put out of business there until the issuance of the Temporary Restraining Order. Plaintiffs' witness, Lowell A. Welnak of Keene, New Hampshire, Vice-President for Claims of Peerless Insurance Company for ten years, and Gerson M. Joseph, a licensed customhouse broker and a member of the Florida Brokers Association, who uses Peerless Insurance Company's surety bonds through said company's agent in Florida, Loren Brokerage, in their testimony supported this contention of plaintiffs.

The defendant did not call any witnesses, and relied on its Memorandum with exten-

sive citations in opposition to plaintiffs' Motion for a Preliminary Injunction filed August 5, 1981.

The witnesses testified that the only notice that they received from defendants was a bar notice of July 13, 1981, informing them that effective immediately they could no longer write bonds in the district by reason of their alleged delinquency in making payment on some outstanding entry accounts.* Plaintiffs say that this action is illegal and violative of procedural due process, citing the fifth amendment to the Federal Constitution, a number of statutory and Code of Federal Regulations provisions including 19 U.S.C. § 1623 and 31 Code of Federal Regulations (CFR) 223.17.

It is the defendants' position that they have a right to refuse to accept plaintiffs' bonds based upon their record of non-payment, citing 19 U.S.C. § 1623(b)(2) and 19 CFR 113.14, 113.15.

Plaintiffs respond by asserting that they have never refused to pay due bills, have not been sued therefor by the Government upon any of their bonds, that their names appear on the current list of approved bonding companies promulgated by the Treasury Department on July 1, 1981, and further, that defendants only recourse against plaintiffs is by way of litigation upon the bonds, or by appropriate proceedings before the Treasury Department for the revocation of their bonding privileges.

The Court's jurisdiction in this case is invoked under 28 U.S.C. § 1581(i)(4), which is the broad, residual grant of power to the Court to adjudicate controversies arising in the administration of customs laws and regulations. Bonding practice is an important part of the customs administrative machinery that exists for the protection and collection of the Government's revenue. And Congress, under a broad, enabling statute, has conferred authority and responsibility therefor upon the Secretary of the Treasury ("Secretary"). See 19 U.S.C. § 1623. Section 1623 deals both with bonds which are not specifically required by law as well as with bonds which are required by law, regulation or instruction of the Secretary to the Customs Service ("Service").

Section 1623(b)(2) on which defendants' counsel relies provides that when a bond is required or authorized by law, regulation, or instruction which the Secretary or the Service is authorized to enforce, the *Secretary* may provide for the approval of the sureties on such bond without regard to any general provision of law. Thus, the current list of approved sureties to which plaintiffs call attention is undoubtedly a manifestation of the *Secretary's* exercise of this statutory power.

Sections 113.14 and 113.15 of 19 CFR on which defendants' counsel also rely deal with bonding powers which the *Secretary*, under the enabling authority of section 1623, has delegated to the district director. Section 113.14 describes and enumerates various types of bonds which may be *executed*, subject to approval of the district direct, among which are:

> (g) *Immediate Delivery and Consumption Entry Bond*—(1) *Single entry bond, Customs Form* 7551. Immediate Delivery and Consumption Entry Bond (Single Entry), Customs Form 7551, in the amount equal to the value of the articles, as set forth in the entry, plus the estimated duty (including any taxes required by law to be treated as duties) and the estimated amount of any other taxes imposed upon or by reason of importation, as determined at the time of entry ....

And section 113.15 provides that the district director may approve any of the bonds described in section 113.14 if he is satisfied that the *amount of the bond is sufficient*, and it is in *proper form*. Obviously, this regulation is derivative of the Secretary's enabling authority under section 1623(b)(1) to *prescribe the conditions and form of such bonds* and *fix the amount of the penalty*. Customhouse broker, Gerson M. Joseph, tes-

---

* This directive was modified by virtue of an announcement made by Government counsel in open court to the effect that defendants had postponed suspension of plaintiffs' bonding privileges in the district until August 3, 1981.

tified that up until July 13, 1981 the only thing the Customs Service did with surety bonds was to approve or disapprove them as to form and amount required.

31 CFR 223.17 and 223.18 on which plaintiffs rely deal with revocation of a surety's certificate of authority, and are also manifestations of the *Secretary's* exercise of section 1623(b)(2) power. Section 223.17 provides that whenever it appears that a company (surety) is not complying with the regulations, the *Secretary* will (1) notify the company of the facts or conduct which indicate such failure, and provide opportunity to the company to respond, and (2) provide opportunity to the company to demonstrate or achieve compliance with the requirements.

The regulation further provides that the *Secretary* shall revoke a company's certificate of authority with advice to it if (1) the company does not respond satisfactorily to his notification of non-compliance, or (2) the company fails to demonstrate or achieve compliance after having been provided an opportunity to do so.

And, insofar as Customs bonding practice is concerned, the revocation proceeding described in section 223.17 is set into motion in accordance with the provisions of section 223.18 which mandates that the company promptly *honor its bonds.* Section 223.18 provides [(a)] if an agency's (district director) demand upon a company (surety) for payment of a claim against it is not settled to the agency's satisfaction, and the agency's review of the situation thereafter establishes that the default is clear and the company's refusal to pay is not based on adequate grounds, *the agency may make a report to the Secretary,* including (1) a copy of the bond, (2) the basis for the claim against the company, (3) a chronological resume of efforts to obtain payment, (4) a statement of reasons offered for non-payment, and (5) a statement of the agency's view in the matter.

The regulation further provides [(b)] on receipt of the report the Secretary, if the circumstances warrant, will notify the company concerned that the agency report may

demonstrate that the company is not keeping and performing its contracts, and that, in the absence of satisfactory explanation, the company's default may preclude the renewal of the company's certificate of authority.

■ It is clear from the foregoing that the Secretary of the Treasury has reserved unto himself the power to terminate a surety's privilege to write bonds in connection with customs matters while delegating to the district director only the power to approve the form and amount of the bonds— thus affording the latter official no local option for resolving disputes arising from bond matters at variance with the reserved power, or to set himself up as the final arbiter of disputes that he is involved in with sureties over alleged delinquencies in payments. There is no question but that a refusal on the part of a district director to accept customs entries with plaintiffs' bonds accompanying them, whether acting on his own or under the direction of a regional commissioner of customs, cannot be interpreted as the exercise of a section 1623(b)(1) power to approve the form or amount of a bond, but is in fact an act of *finality* which invades a section 1623(b)(2) power with grave consequences attached to it.

■ Nothing can disturb the confidence of an importing public faster or with more certainty than the knowledge, or even a mere suggestion that a surety on the public's bonds lacks the financial stability that the public was led to believe it possessed when engaged. Obviously, therefore, it was to guard against such an event that the Secretary chose to preside over events influencing the exercise of such devastating power, and then only after shepherding these events through a carefully detailed procedure designed to accord the surety protection of a valuable property right safeguarded by constitutional due process.

On the basis of the papers before the court, the testimony of plaintiffs' witnesses and the arguments of counsel it clearly appears that at the time the bar order went out a dialogue was in progress between

plaintiffs and defendants relative to verification of plaintiffs' liability with respect to particular entries from among a mass of entry data on computer print-outs.

While the defendants did not present any witnesses, it appears to the court from argument by Government counsel, Mr. Wiskin, that there is room for improvement on plaintiffs' part of business methods calculated to make prompt and ready identification of their entry and bond responsibilities—a fault which may well have exacerbated the situation and led to understandable frustration on the part of customs officials in the district. There is nothing before the court to indicate that plaintiffs were in *default* on any of the bonds or had *refused* to make payment under any of them, or that defendants had filed a delinquency report on plaintiffs with the Secretary of the Treasury to invoke a section 223.18 proceeding against them.

The Court is, therefore, convinced that plaintiffs have shown the requisite injury and clear legal right to relief which is not counterbalanced by any showing of injury or loss to the Government, whose remedies remain fully intact. Consequently, there is no need to require the plaintiffs to give security, and the defendants' motion that the plaintiffs be required to furnish a bond in the amount of defendant's unsettled claims is denied.

The Order granting the plaintiffs' motion for a preliminary injunction is attached to this memorandum.

### ORDER

This proceeding having been regularly brought on for hearing Thursday, August 6, 1981, in Miami, Florida, pursuant to the motion of the plaintiffs for a Preliminary Injunction against the defendants for the purpose of enjoining them from refusing to honor the surety bonds issued by the plaintiffs, Old Republic Insurance Company, Peerless Insurance Company, and Insurance Company of North America in connection with entries of merchandise into the United States through the Miami, Florida and Savannah, Georgia Customs Districts; and the Court having heard and considered the evidence adduced, the arguments presented as well as the memoranda submitted by counsel, the Court doth conclude that the rejection of plaintiffs surety bonds on entries filed in the Districts of Miami and Savannah by the District Directors, dated July 13, 1981, without prior notice and opportunity for hearing as required by 31 C.F.R. 223.17 will cause irreparable harm, injury, loss, and damage, in that it forces members of the importing public who are customers of plaintiffs to seek alternative sources for purposes of obtaining surety bonds on importations, with the possible permanent loss of such customers by the plaintiffs, and that plaintiffs are likely to prevail on the merits. Therefore, it is:

ORDERED ADJUDGED AND DECREED that WINSTON E. PITMAN, DISTRICT DIRECTOR OF CUSTOMS, MIAMI, FLORIDA: GEORGE J. MC MANUS, DISTRICT DIRECTOR OF CUSTOMS, SAVANNAH, GEORGIA: ROBERT N. BATTARD, REGIONAL COMMISSIONER OF CUSTOMS, MIAMI, FLORIDA: and the UNITED STATES CUSTOMS SERVICE, together with their agents, servants, employees and representatives under the direct or indirect control of said Defendants, are hereby preliminarily enjoined from:

1. Refusing to honor surety bonds issued by the plaintiffs, OLD REPUBLIC INSURANCE COMPANY, PEERLESS INSURANCE COMPANY and INSURANCE COMPANY OF NORTH AMERICA in conjunction with entries of merchandise into the United States through the Miami and Savannah Customs Districts, or any other Customs District.

2. Engaging in any conduct that results in the surety bonds issued by the plaintiffs, OLD REPUBLIC INSURANCE COMPANY, PEERLESS INSURANCE COMPANY and INSURANCE COMPANY OF NORTH AMERICA being dishonored with regard to any entries of merchandise made into the United States through the Miami and Savannah Customs Districts, or any other Customs District.

3. Revoking, withdrawing, or cancelling the status of OLD REPUBLIC INSUR-

ANCE COMPANY, PEERLESS INSUR-ANCE COMPANY and INSURANCE COMPANY OF NORTH AMERICA as sureties approved by the Secretary of Treasury to issue surety bonds with regard to entries of merchandise into the United States through the Miami and Savannah Customs Districts, or any other Customs District.

4. Implementing any of their directives or policy statements that result in the surety bonds of OLD REPUBLIC INSURANCE COMPANY, PEERLESS INSURANCE COMPANY and INSURANCE COMPANY OF NORTH AMERICA being dishonored with regard to the entry of merchandise into the United States through the Miami and Savannah Customs Districts, or any other Customs District.

5. Failing to release any merchandise covered by said Customs Surety bonds for the sole reason that said merchandise is subject to such bonds.

The Temporary Restraining Order issued July 16, 1981 is hereby dissolved.

This Preliminary Injunction shall remain in full force and effect until disposition of this case on the merits or until such further order of the Court.

Defendant's motion to dismiss is overruled.

A copy of this order shall be forthwith served on each of the defendants herein.