**HERA SHIPPING, INC., Plaintiff**

v.

**Harry CARNES, et al., Defendants.**

**Court No. 86-5-00577.**

United States Court of International Trade.

July 28, 1986.

Law Offices of Max P. Engel, Miami, Fla., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office and Susan Handler-Menahem, Civil Division, Dept. of Justice, Commercial Litigation Branch, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge.

Plaintiff, a bonded international carrier, brought this action to enjoin the District Director of Customs in Miami, Florida from increasing its bond from $50,000 to $1,300,000 and to ask the court to declare that plaintiff be provided with a full administrative hearing on whether its bond should be increased. The government has moved to dismiss the action, and in the alternative, for summary judgment.

Plaintiff complained that the District Director's letter of May 5, 1986 did not give the 30-day notice required by the Customs Regulations and that plaintiff was not given due process of law, namely, an administrative hearing at which reasonable cause would be shown for increasing its bond.

The issue of notice became moot when the effective date of the increase was changed from May 15, 1986 to June 4, 1986.

The issue of due process might have had some limited measure of validity if the government had refused to go beyond the terse statement to plaintiff in its letter of May 5 that it had reviewed the bond and "find the amount to be insufficient in view of the actual liabilities incurred by your firm."

However, the informational defects of the letter of May 5 were remedied by the information supplied in the government's motions. To the extent that the lack of information in the letter deprived plaintiff of due process, that was cured here and there is no need for the court to require any additional steps. *Cf. Jennings v. Mahoney,* 404 U.S. 25, 92 S.Ct. 180, 30 L.Ed.2d 146 (1971).

Accompanying the answer and the government's motion to dismiss, or for summary judgment, is the affidavit of the District Director of Customs Service in Miami, Florida.

This establishes that the District Director, based on information provided by inspectors and special agents of the Customs Service, and, in particular, on a copy of an extensive affidavit in support of a search warrant executed by a special agent, had reason to believe that plaintiff was systematically directing bonded merchandise, notably liquor, into the commerce of the United States without filing entries or paying duties or taxes.

District Directors are fully authorized by law and regulation to require bonds and to require changes in them, all in the interest of protecting the revenue of the United States. The authority flows from 19 U.S.C. § 1623 which in relevant part reads as follows:

19 U.S.C. § 1623:

(a) In any case in which bond or other security is not specifically required by law, the Secretary of the Treasury may by regulation or specific instruction require, or authorize customs officers to require, such bonds or other security as he, or they, may deem necessary for the protection of the revenue or to assure compliance with any provision of law, regulation, or instruction which the Secretary of the Treasury or the Customs Service may be authorized to enforce.

(b) Whenever a bond is required or authorized by a law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to

enforce, the Secretary of the Treasury may—

(1) Except as otherwise specifically provided by law, prescribe the conditions and form of such bond, and fix the amount of penalty thereof,....

The statutory authority is exercised in a number of regulations setting guidelines for determining the amount of a bond, the grounds for requiring additional security, and the conditions of bonds for international carriers (the class to which plaintiff belongs). These regulations read as follows:

19 C.F.R. § 113.13(b): Guidelines for determining amount of bond:

In determining whether the amount of a bond is sufficient, the district director or regional commissioner in the case of a bond relating to repayment of erroneous drawback payment (see § 113.11) should at least consider:

(1) The prior record of the principal in timely payment of duties, taxes, and charges with respect to the transaction(s) involving such payments;

(2) The prior record of the principal in complying with Customs demands for delivery, the obligation to hold unexamined merchandise intact, and other requirements relating to enforcement and administration of Customs and other laws and regulations;

(3) The value and nature of the merchandise involved in the transaction(s) to be secured;

(4) The degree and type of supervision that Customs will exercise over the transaction(s);

(5) The prior record of the principal in honoring bond commitments, including the payment of liquidated damages; and

(6) Any additional information contained in any application for a bond.

19 C.F.R. § 113.13(d): Additional security

Notwithstanding the provisions of this section or any other provision of this chapter, if a district director or regional commissioner believes that acceptance of a transaction secured by a continuous bond would place the revenue in jeopardy or otherwise hamper the enforcement of Customs law or regulations, he shall require additional security.

19 C.F.R. § 113.64: International carrier bond conditions

A bond for international carriers shall contain the conditions listed in this section and may be either a single entry or continuous bond.

(a) If any vessel, vehicle, or aircraft, or any master, owner, or person in charge of a vessel, vehicle or aircraft incurs a penalty, duty, tax or other charge provided by law or regulation the obligors agree to pay the sum upon demand by Customs.

(b) The principal agrees to comply with all laws and Customs Regulations applicable to unlading, safekeeping, and disposition of merchandise, supplies, crew purchases, and other articles on board the vehicle, vessel, or aircraft; and to redeliver the foregoing to Customs upon demand as provided by Customs Regulations. If principal defaults, obligors agree to pay liquidated damages equal to the value of the merchandise involved in the default or three times the value of the merchandise involved in the default if the merchandise is restricted merchandise or alcoholic beverages, or such other amount as may be authorized by law or regulation. It is understood and agreed that the amount to be collected under this condition shall be based upon the quantity and value of the merchandise as determined by Customs. Value as used in these provisions means value as determined under 19 U.S.C. 1401a.

(c) If the principal's vessel, vehicle, or aircraft is granted clearance without filing a complete outward manifest and all required export documents, the principal agrees to file timely the required manifest and all required export documents. If the principal defaults, the obligors (principal and surety) agree to pay liquidated damages of $50 per day for the first 3 days, and $100 per day thereafter, up to $1,000 in total.

(d) The obligors agree to exonerate the United States and its officers from any

risk, loss, or expense arising out of entry or clearance of the carrier, or handling of the articles on board.

On the side of the government's exercise of its power without a prior hearing are a number of important considerations.

The grant of authority for requiring bonds and setting their amount is strongly stated and comprehensive. The use of bonds, rather than a strict requirement of payment for each transaction, involves an element of trust in the conduct of the bonded party. The modification of terms of the bond is, in the abstract at least, merely the enlargement of something that is already in place. It does not have the character of a completely new intrusion into the sphere of a party's activity.

It does not seem reasonable that a party's right to keep doing business at a certain cost of guaranteeing the performance of its duties is paramount to the government's right to protect the revenue in a case where there is reason to doubt the performance of those duties.

In short, the business person's right to have a bond remain unchanged is not the sort of property right which is of such fundamental importance that it must remain in place, unmolested, until good cause to change it is developed in a hearing.

Obviously, the power to set bonds can be abused to put people out of business without reasonable justification. But that extreme possibility is guarded against by the requirement that the notice provide sufficient information as to the basis for the change to allow it to be challenged in court. The mere existence of that extreme possibility does not justify the full panoply of due process in advance of every modification of bond terms.

While comparisons of various "rights" are difficult the court is of the opinion that the interest of plaintiff in the amount of a bond does not appear to be as significant in the scale of values as the interests for which full due process rights have been found. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (entitle-ment to welfare payments); *Joint Anti-Facist Refugee Committee v. McGrath,* 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (designation of organizations as Communist).

The situation is analogous to that in *Gallagher & Ascher Co. v. Simon,* 687 F.2d 1067 (7th cir.1982), not in the sense that plaintiff has the sort of property right that customs brokers were found to have in the term special permits under which they operated, but rather in that a lesser measure of due process satisfies the balance of interests involved.

In addition, a comparison with the situation recently addressed by this court in *American Customs Brokers Co. v. United States Customs Service,* 637 F.Supp. 218, —— CIT —— (1986), highlights the deficiencies in plaintiff's case. In that case the court preliminarily enjoined the government from revoking a customhouse broker's "immediate delivery privilege," on the ground that the government had not complied with statutory requirements for giving written notice and for giving the affected party an opportunity to demonstrate or achieve compliance. Moreover, the government failed to show that the conduct which led to the revocation had caused any harm to the government or the public. (The conduct was the listing of erroneous social security or tax identification numbers on the entry papers of automobiles entered under bond pending installation of emission controls and safety equipment.)

In short, the *American Customs Brokers* case involved a more portentous step taken by the government (revocation), done with a lower level of notice and for questionable reasons. Here, the step taken of increasing the bond has been proportionate to the conduct being regulated and the original notice deficiency has been cured.

It must be emphasized that a party is not entirely helpless when its bond is increased. The question of whether the increase was based on a reasonable belief as to the existence of the necessary justifying conditions will always be open, as will the reasonableness of the increase in relation to the objectives sought to be secured.

Here the first question has already been answered in the affirmative. On the reasonableness of the increase the court also finds in the affirmative. The uncontroverted affidavit of the District Director shows that, under the circumstances of this case, it was not unreasonable to estimate that a single day's activity of plaintiff could justify the assessment of up to $20,000 in liquidated damages. Nor was it unreasonable to treat the activities of plaintiff as a continuing practice. In short, to protect the revenue against ongoing activity of this sort it was not unreasonable to require a bond of $1,300,000.

In sum, the lack of merit to plaintiff's claim of deprivation of due process precludes injunctive or declaratory relief.

Plaintiff's failure to respond to the defendants' motion to dismiss or for summary judgment warrants finding that the increase in the amount of the bond was based on a reasonable belief as to the existence of the necessary justifying conditions and the court so finds.

Accordingly, the government's motion for summary judgment is hereby granted.