**AMERICAN MOTORISTS INSURANCE COMPANY, Plaintiff,**

v.

**Quintin L. VILLANUEVA, Jr., Regional Commissioner of Customs, Pacific Region; William Von Raab, Commissioner of Customs; and the United States Customs Service, Defendants.**

**Court No. 89–01–00030.**

United States Court of International Trade.

Feb. 15, 1989.

Russotti & Barrison (Harvey Barrison, Philip Russotti, New York City, and Sherri L. Goldsmith), Wantagh, N.Y., also on the brief: Christy & Viener (Kenneth W. Taber), New York City, for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, New York City, (James A. Curley), Washington, D.C., for defendants.

## OPINION

TSOUCALAS, Judge.

Plaintiff American Motorists Insurance Company, a surety authorized by the Secretary of the Treasury under 19 U.S.C. § 1623 and 31 U.S.C. § 9301 *et seq.* (1982) to write bonds, moves for injunctive relief against enforcement of 19 C.F.R. § 113.38. Defendants oppose and cross-move to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(5) of the Rules of this Court.

### Background

19 C.F.R. § 113.38 provides for disciplinary sanctions against a surety which is "significantly delinquent" in resolving outstanding debt claims against bonds it has secured. The United States Customs Service (Customs) accumulated 113 claims against plaintiff over the course of the last several years in connection with bonds for which the principals failed to pay.[1] To apprise plaintiff of these outstanding claims, Customs mailed four separate notices to plaintiff for each of 113 claims.[2]

---

1. Plaintiff stated during the preliminary injunction hearing held on Feb. 3, 1989 that one of the 113 claims was resolved.

2. "For each claim, the Customs first issues a demand for payment to the principal, a copy of which is mailed to the surety. When the principal fails to pay, a demand for payment is made directly on the surety. This demand, if not paid, petitioned or protested, is then followed by three successive bills which are addressed to the surety for the now past due amount set forth in the original demand. It is *only* after the surety has ignored *all* of these notices by either failing to pay, [neglecting to supply a satisfactory reason for delay in payment,] petitioning for relief under 19 U.S.C. § 1623(c), or filing a protest under 19 U.S.C. § 1514, that the Regional Commissioner" will entertain sanction actions under 19 C.F.R. § 113.38. *Defendants' Brief in Opposition to the Motion for a Preliminary Injunction and in Support of Motion to Dismiss* at 19 (emphasis in original) (*Defendants' Brief*).

Plaintiff did not make a concerted effort to rebut these claims in accordance with 19 C.F.R. § 113.38 nor did plaintiff file a petition, prompting Customs to conclude that plaintiff's nonpayment is without adequate cause.

On December 22, 1988, defendant Quintin L. Villanueva, Jr., Regional Commissioner of the U.S. Customs Service, Pacific Region, sent plaintiff a formal demand letter which stated:

> Within 14 days of receipt of this notice, payment must be made, or justification provided for failure to pay, or you must demonstrate the existence of a significant legal issue which justifies further delay in payment.

Letter from Q. Villanueva to Plaintiff (Dec. 22, 1988), *Administrative Record* at 2. The letter also contained a warning that failure to adequately reply to this letter would lead to disciplinary actions under 19 C.F.R. § 113.38. Plaintiff's attorney-in-fact James M. Gorman[3] responded on January 10, 1989:

> To begin with the United States Customs Service has failed to produce adequate documentation to justify any debt. Pursuant to 19 C.F.R. 113.38, your office may only refuse to accept additional obligations by the surety to the extent its assets are unencumbered. If we were to add up the purported debt stated on your enclosures, the amount would not exceed the surety company's worth. To attempt to refuse to accept any further bonds would not be in accordance with the Customs regulations.

The Honorable Peter K. Leisure on November 25, 1988, entered a decision in the U.S. District Court for the Southern District of New York in the matter, *American Motorists Insurance Company v. United Furnace Co., Inc.* The decision in part states a surety is not to be considered to have a liability until there is a "judicial determination of liability." How can a surety make payments on liquidated damage cases or be considered delinquent based on the Court's decision?

Letter of J. Gorman to Q. Villanueva (Jan. 10, 1989), *Administrative Record* at 7.

Concluding that these grounds do not constitute an adequate defense against the 113 claims, the Regional Commissioner informed plaintiff on January 17, 1989 that commencing at 12:01 A.M., January 27, 1989, plaintiff will be formally designated as a delinquent surety under 19 C.F.R. § 113.38. *See* Letter from Q. Villanueva to J. Gorman (Jan. 17, 1989), *Administrative Record* at 8. Such designation would lead to temporary rejection of new bonds secured by plaintiff in the Pacific Region "for a minimum of five (5) days or until all outstanding delinquencies are resolved, whichever is later." *Id.* The Regional Commissioner also recapitulated the following point in this letter: "the files in question were and are available for your review at the appropriate district Fines, Penalties and Forfeitures Offices." *Id.*

On January 24, 1989, plaintiff moved for a temporary restraining order (TRO) and a preliminary injunction. The Court granted a TRO following oral arguments presented by the parties on January 24, and on February 3, 1989 a full hearing was held to determine whether a preliminary injunction should issue. Mr. Gorman, testifying on plaintiff's behalf, was sole witness at this hearing.

### Discussion

■ The criteria for granting the extraordinary equitable relief plaintiff seeks are: (1) a threat of immediate and irreparable harm; (2) likelihood of success on the merits; (3) that the public interest would be better served by issuing rather than by denying the injunction; and (4) the balance of hardships to the parties favors the issuance of an injunction. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983); *S.J. Stile Associates, Ltd. v. Snyder*, 646 F.2d 522, 525, 68 C.C.P.A. 27 (1981). As a threshold prerequisite, plaintiff bears the heavy burden of profferance broker specializing in surety bonds virtually exclusively for plaintiff.

3. Mr. Gorman is an Executive Vice–President of C.A. Shea and Company, Inc., a licensed insur-

ing substantive claims which deserve more mature and deliberate review. Although this Court recognizes the tentative nature of the opinion on the merits, the degree and number of deficiencies in plaintiff's allegations requires a denial of a preliminary injunction.

Plaintiff mainly raises four substantive allegations: (1) 19 C.F.R. § 113.38 is statutorily prohibitive; (2) alternatively, the application of this regulation was arbitrary, capricious, or otherwise not in accordance with law; (3) the disputed regulation is unconstitutionally vague and violative of substantive and procedural due process; and (4) the Regional Commissioner's decision is an impermissible retaliation against plaintiff's exercise of its first amendment rights.

### A. *Likelihood of Success on the Merits*

1. Statutory Basis of 19 C.F.R. § 113.38

■ The principal authority plaintiff cited for the proposition that the Regional Commissioner's decision exceeds Customs' authority is *Old Republic Insurance Co. v. Pitman,* 520 F.Supp. 1225 (CIT 1981). In *Old Republic,* several district directors and one regional commissioner of Customs attempted to prevent eleven insurance companies from writing bonds in areas under the signatory Customs officials' direction. The Customs officials grounded their decision on 31 C.F.R. §§ 223.17 and 223.18 which allow the Secretary of the Treasury to revoke a delinquent certified surety's ability to write bonds. The *Old Republic* court issued a preliminary injunction, noting that the Secretary of the Treasury possesses the exclusive power under 19 U.S.C. § 1623(b)(2), and by derivation under 31 C.F.R. §§ 223.17 and 223.18, to revoke or decertify the privilege of writing bonds. The scope of this ruling was later clarified in order to acknowledge Customs' manifest authority to regulate matters concerning surety bonds.

31 U.S.C. § 9301 *et seq.* grants the Secretary of the Treasury the special prerogative of certifying eligible sureties and revoking that privilege. Since this authority was not delegated to Customs, Customs could not invoke 31 C.F.R. §§ 223.17 and 223.18 to prevent a surety from writing bonds.

19 U.S.C. § 1623 also grants the Secretary of the Treasury the authority over surety bonds. The Secretary delegated his power under 19 U.S.C. § 1623 to Customs. Treas.Order No. 165, *revised,* T.D. 53,654, 89 Treas. Dec. 334 (Nov. 2, 1954). This assignment endowed Customs with substantial regulatory power over surety bond matters, but did not extend to certifying sureties and revoking that privileged status, *see* 49 Fed.Reg. 41,152, 41,156 (Oct. 19, 1984), because the Secretary of the Treasury retains exclusive authority over those proceedings.

A complementary division of authority was thus delineated between the Secretary of the Treasury and Customs: the Secretary of the Treasury certifies a class of sureties which are eligible to secure bonds while Customs has the power to accept or reject bonds offered by a particular member of that certified class. Specifically, Customs may decide, in conformity with the delegated authority under 19 U.S.C. § 1623, to temporarily reject bonds from certified delinquent sureties. *Id.*

2. Application of 19 C.F.R. § 113.38

19 C.F.R. § 113.38, which was promulgated in accordance with 19 U.S.C. § 1623, provides in part:

(c)(3) *Nonacceptance of bond upon instructions by Commissioner.* The Commissioner may, when he believes the circumstances warrant, issue instructions to the district directors and regional commissioners that they shall not accept a bond secured by an individual or corporate surety when that surety, without just cause, is significantly delinquent either in the number of outstanding bills or dollar amounts thereof.

(4) *Notice of surety.* The appropriate Customs officer may take the above actions only after the surety has been provided *reasonable notice with an opportunity to pay delinquent amounts, provide justification for the failure to pay, or demonstrate the existence of a signif-*

*icant legal issue justifying further delay in payment.*

(5) *Review and final decision.* After a review of any submission made by the surety under paragraph (c)(4) of this section, if the appropriate Customs officer is still of the opinion bonds secured by the surety should not be accepted, written notice of the decision shall be provided to the surety in person or by certified mail....

Before a "Customs officer" may adopt disciplinary measures against a surety for being "significantly delinquent," a "reasonable notice" of the circumstances warranting sanctions will be provided. Further, a surety will be given "an opportunity to pay delinquent amounts, provide justification for the failure to pay, or demonstrate the existence of a significant legal issue justifying further delay in payment." Any rebuttal to Customs' claims will receive administrative scrutiny. *Id.*

▮ Plaintiff principally argues its obligation to comply with 19 C.F.R. § 113.38(c)(4) was obviated because the notices it received from Customs did not provide sufficient information for purposes of ascertaining liability. Implication of this assertion is that had Customs provided some "rudimentary claim identification information," *Plaintiff's Reply Memorandum in Support of Its Motion for a Preliminary Injunction and in Opposition to Defendants' Motion to Dismiss* at 1 (*Plaintiff's Reply Memorandum*), including a copy of the bond in issue, plaintiff would have complied with 19 C.F.R. § 113.38(c)(4) by responding to the 113 claims.[4] In contradistinction to this averment, Mr. Gorman, plaintiff's key witness, repeatedly alluded during the hearing for a preliminary injunction that in spite of insufficiency of evidence, plaintiff supplied Customs with justification for nonpayment for each of the 113 claims on numerous occa-

sions. Neither position is supported by the administrative record.

The germane inquiry regarding the notice requirement is whether Customs provided plaintiff with "reasonable notice" so that plaintiff could comply with 19 C.F.R. § 113.38(c)(4). Invoking *Old Republic Insurance Co. v. United States*, 10 CIT 1, 625 F.Supp. 983 (1986), plaintiff maintains that a condition precedent to complying with 19 C.F.R. § 113.38(c)(4) is a receipt of a copy of bond for the 113 claims. As stated above, plaintiff received several notices for each of 113 claims. The record indicates that a notice contains a copy of Customs Form 5955A, a "Notice of Penalty or Liquidated Damages Incurred and Demand for Payment," which is addressed to the principal and generally contains, *inter alia*, the claim number, port name and code, broker number, name, address, and identification number of the principal, date of entry, entry number, description of merchandise, and payment amount. The record further shows that a bond and entry were included in some of the notices.

*Old Republic* held that Customs' notice of demand for payment against a bond must contain information which provides "sufficient means of ascertaining the bond against which demand for payment was made" to enable the surety to file a protest under 19 U.S.C. § 1514(c)(2) (1982). *Id.* at 983. In this regard, a demand letter which was devoid of "importer's [or principal's] name, the entry number or the bond for the bill in question" was deemed to be deficient. *Id.* at 985. It cannot be said that *Old Republic* established an inflexible rule which categorically requires Customs to enclose a copy of the bond for each notice of claim and each notice of demand for payment.

Indeed, *Peerless Insurance Co. v. United States*, 12 CIT ——, 703 F.Supp. 104, (1988), *notice of appeal filed* (Fed.Cir. Jan.

---

**4.** The shade of this contention varies. In *Memorandum of Law in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (Plaintiff's Memorandum)*, plaintiff states, "[t]he claims involved here were not in fact accompanied by any documentation; mostly there was not even sufficient informa-

tion given to identify the bond or entry that was the subject of the claim." *Id.* at 15. In *Plaintiff's Reply Memorandum*, it is argued that Customs should have provided "at a minimum, ... the bond number, broker name and broker location for each claim." *Id.* at 2.

31, 1989), stated that a Customs' demand for payment against a surety for one claim which does not include a copy of the bond in dispute nonetheless constitutes sufficient notice to a surety which is protesting the bill under 19 U.S.C. § 1514(c)(2). It was reasonable to require plaintiff therein to obtain a copy of the bond in issue from the "Customhouse at the port of entry" when it was already furnished with "the name and address of the delinquent importer [or principal], the bill number, billing date, port of entry, document date, entry number, the amount due, and the importer number." *Id.* 703 F.Supp. at 105. Plaintiff in this case was given at least as much information in the original claim notices as well as in the final notice of demand for payment on the 113 claims and similarly could have obtained additional information from the customhouse.

It should be noted at this juncture that the instant case concerns sufficiency of a "reasonable notice" for purposes of 19 C.F.R. § 113.38(c)(4), while *Old Republic* and *Peerless Insurance* involved disputes surrounding sufficiency of "notice of demand for payment" under 19 U.S.C. § 1514(c)(2). The Court views that the controverted regulation demands a less stringent standard of notice than one required for satisfying 19 U.S.C. § 1514(c)(2). The purpose of notice under 19 C.F.R. 113.38(c)(4) is to elicit a rebuttal from a surety so that the parties may engage in a dialogue within the administrative regime to further explore and clarify the claims in dispute. The notice under 19 U.S.C. § 1514(c)(2), on the other hand, is generally calculated to mark a termination point in administrative procedures to facilitate transition to judicial proceedings. The degree of accuracy and sufficiency of informational indicia is critical at this point because the plaintiff sureties risk judicial dismissal of their actions if they cannot locate the protestable transactions within the jurisdictional time frame.[5]

The requirement of "reasonable notice" under 19 C.F.R. § 113.38(c)(4) is not associated with such exigency; it occurs antecedent to a notice of demand for payment under 19 U.S.C. § 1514(c)(2). As stated above, plaintiff's principal excuse for noncompliance with 19 C.F.R. § 113.38(c)(4) is that it did not receive copies of disputed bonds in connection with some of the 113 claims and that there were some errors in the documents supporting the several claims.[6] This is precisely the kind of occurrence easily resolved by complying with the regulation, i.e., by demanding an explanation for any discrepancy or by self-gathering the additional data from the customhouse with modest effort and informing Customs as to any information it could not locate with such effort. It is axiomatic that if plaintiff was able to identify the errors that it asserts were contained in some of the 113 claims, then the presumably corrective information was in plaintiff's possession. It is thus difficult to believe that the presently asserted reasons were genuine grounds for not complying with 19 C.F.R. § 113.38(c)(4). If the challenges against the 113 claims were as formidable as plaintiff now asserts them to be, plaintiff could have easily presented plausible defenses at the administrative level, thereby protecting itself against the disciplinary measure that it now faces.

In view of plaintiff's chronic non-compliance with 19 C.F.R. § 113.38(c)(4) even on those occasions when Customs supplied the documents whose absence is invoked by plaintiff as a defense, plaintiff's allegations amount to post-hoc litigious assertions. The record discloses that plaintiff's rebuttal only addressed about seventeen claims. Thus contrary to plaintiff's allusion, it is not the case that plaintiff furnished Customs with explanations for nonpayment on each of the 113 claims. Further, even on those rare instances when plaintiff made the effort to respond, the content of the responses is notable for lack of regard for sound administration of the law. For instance, one of thirteen form letters with

---

**5.** This analysis does not affect the adequacy of both types of notice plaintiff received, since they fulfilled the higher notice standard demanded by 19 U.S.C. § 1514(c)(2).

**6.** Some of the alleged errors are: wrong surety, cancelled claims, and mitigated amounts paid.

identical substance, exclusive of the particular claim at issue, states:

> Without a copy of the bond, entry and bill the surety can not and will not be in a position to respond any further. Referral to the Justice Department will be a waste of time and resources since they will need the same information we have requested. Why not send us the information and save yourselves the extra work.[7]

Plaintiff could have "saved" itself from the disciplinary sanctions through institution of a more efficient record-keeping system; Customs is not plaintiff's private record-keeper. See *Peerless Insurance*, 703 F.Supp. at 106.

Plaintiff further endeavors to vindicate its position by maintaining that Customs had a practice of providing bond papers with the claims "up until September 10, 1987." *Plaintiff's Memorandum* at 14. The Court does not discern anything in the law which mandates Customs to supply such a document. To the extent such data were provided, it was done out of courtesy and good will to which plaintiff reciprocated with sporadic, unsatisfactory, presumptuous responses. Indeed, with a revamping of prevailing regulations regarding bonds in 1984, including inauguration of 19 C.F.R. § 113.38 and computerized bond control system, Customs appears to have contemplated that sureties will be expected to obtain, through an on-line computer or manual query procedure, pertinent bond information where a courtesy copy was not generated due to technical or mechanical problems. *See* 49 Fed.Reg. at 41,153. As one court aptly observed, "[t]he use of bonds, rather than a strict requirement of payment for each transaction, involves an element of trust in the conduct of the bonded party." *Hera Shipping, Inc. v. Carnes*, 10 CIT 493, 496, 640 F.Supp. 266, 269 (1986). Under the facts of this case, the Court views that plaintiff has abused the trust Customs generously accorded to it.

Alternatively, it is argued that the disciplinary measure is unjustified because "86 of the 113 claims ... are already the subject of timely petitions." *Plaintiff's Reply Memorandum* at 3. 19 C.F.R. § 172.12, on which plaintiff relies, states in part:

§ 172.12   **Filing of petition for relief.**

....

(b) *When filed.*

....

(2) The surety will receive notice to pay the liquidated damages if the principal fails to either timely file a petition or to pay or make arrangements to pay the liquidated damages. *The notice will be sent to the surety within 10 days after the expiration of the principals 30–day petitioning period or as soon thereafter as possible. The surety will then have an additional 30 days from the date of this notification to file its own petition for relief.* (Emphasis added).

To be considered timely, a surety must file petition within 30 days of initial notice of its liability as a surety. Plaintiff stated at the conclusion of the hearing on February 3, 1989 that it filed petitions within 30 days of the December 22, 1988 notice of formal demand for payment. The record indicates that these petitions are untimely because all the initial notices to plaintiff are dated well before December 22, 1988.

Plaintiff may not attempt to amplify the jurisdictional time period by arguing that the final letter of demand for payment, dated December 22, 1988, was accompanied by copies of Customs Form 5955A. While 5955A states that the recipient has 30 days to file a petition, this document is *addressed to the principal,* only a copy of which is sent to the surety. Customs attaches these forms in its initial notices to the surety to apprise it of the principal's refusal to pay so that the surety may take appropriate actions. *See Defendants'*

---

7. *See e.g.,* Letter from G. Gorman to M. Zehner (Dec. 16, 1987), *Administrative Record* accompanying Claim 84–2704–52241.

The record appears to demonstrate that Customs sent plaintiff the information requested in

these form letters on at least one occasion, but it is unclear whether plaintiff thereafter offered an explanation for nonpayment in connection with that particular claim.

*Brief* at 19–20. Attachment of these documents in later notices and in the final letter of demand for payment can only be considered as an act of courtesy to facilitate plaintiff's compliance with 19 C.F.R. § 113.38(c)(4). Such a performance of courtesy does not resurrect the applicability of 19 C.F.R. § 172.12.[8]

■ Plaintiff also justifies its non-compliance with 19 C.F.R. § 113.38(c)(4) on grounds that *American Motorists Insurance Co. v. United Furnace Co.*, 699 F.Supp. 46 (S.D.N.Y.1988), *appeal docketed*, No. 88–9053 (2nd Cir. Dec. 22, 1988) empowers it to withhold payment on the 113 outstanding claims until payment is ordered by a court decision. *See supra* p. 926. *American Motorists*, a decision rendered by the Southern District Court of New York which is on appeal, appertained to the narrow issue of whether Customs' demand for payment on a surety in connection with an unresolved claim constitutes "liability" under the terms of an indemnification agreement, triggering principal's immediate contractual performance. The court therein found that the matter is not ripe for decision, noting that "there has been no legal action [by Customs against the surety].... [The surety] has made no payment to the Customs Service and has incurred no actual expense or loss." *Id.* at 48.

Being an indemnity action, *American Motorists* has an attenuated precedential value for purposes of resolving a conflict between Customs and a surety. The Southern District Court acknowledged this point: "it is doubtful that this Court would have jurisdiction over" an action between Customs and surety. *Id.* n. 1. Further, obligations to Customs are specifically governed by the pertinent laws, of which 19 C.F.R. § 113.38 is a constituent part. The thrust of this regulation is to *eschew* litigation whenever possible through examination and resolution of the parties' grievances within the regulatory framework.

This Court thus believes the Southern District Court's allusion to the timing of a surety's liability to Customs was an observation attributable to the fact that the surety therein *filed a timely petition against Custom's claim, id.* at 48, an unsatisfactory resolution of which would require a judicial determination of liability.

3. Constitutionality of 19 C.F.R. § 113.38

■ Plaintiff attacks 19 C.F.R. § 113.38 on grounds that it is violative of the Constitution because it is too vague and fails to meet the requirements of substantive and procedural due process. With regard to the vagueness claim, any uncertainty "over the meaning of [significant delinquency] could easily have been clarified by an inquiry directed to agency officials." *Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067, 1079 (7th Cir.1982) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982)). Further, although an agency has a wide discretion in interpreting the language of the laws it is entrusted to administer, 19 C.F.R. § 113.38 contains several inherent safeguards as a check against abuse. Specifically, subsection (c)(3) provides that whether a surety is "significantly delinquent" will be determined by "either in the number of outstanding bills or dollar amounts thereof." Plaintiff also may contest the application of the disputed term by raising objections against the claims. In any event, the Court is of the opinion that 113 claims against which plaintiff neither made a concerted effort to rebut nor file timely petitions constitute significant delinquency. Under the facts of this case, plaintiff "cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates* at 495, 102 S.Ct. at 1191.

■ The type of interest at stake in this action is a protectible property right under

---

8. If Customs' practice of including Customs Form 5955A in later notices is breeding widespread misunderstanding among sureties as to the proper jurisdictional period, then the Court sees the need on the part of Customs to simplify and consolidate the notice processing procedures.

the Constitution. Nonetheless, it could legitimately be curtailed if the particular means chosen is rationally related to the end to be sought. *See Williamson v. Lee Optical of Okl., Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The purpose of 19 C.F.R. § 113.38 is to defend national revenue through efficacious collection of overdue debts. Prescribing informal communication and hearing to examine and weigh the parties' grievances prior to resorting to more cumbersome judicial relief seems to be an exceedingly rational way of processing the collection on the unresolved debt obligations.

The procedural prong of due process demands a "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted). The specific calculus for analyzing the issue was articulated in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

As stated above, enforcement of disciplinary sanctions will authorize the District Directors of Customs in the Pacific Region to temporarily refuse new bonds secured by plaintiff for five days or until the 113 claims are adequately resolved, whichever is later. The requisite notice requirement was amply satisfied by several letters sent in connection with each of 113 claims against which plaintiff was afforded an opportunity to raise objections.

In view of plaintiff's chronic non-compliance with existing proceedings under 19 C.F.R. § 113.38, it is difficult to discern the probative value of providing plaintiff with additional procedures. Had plaintiff promptly and consistently abided by the existing procedures, a more rigorous analysis of this issue by the Court would have been justified. In this regard, plaintiff is not in a position to attack the adequacy of procedures that the Regional Commissioner follows in reviewing the objections that are raised in conformity with 19 C.F.R. § 113.38(c)(4). Resolution of this question should be reserved to a litigant who conscientiously complied with the regulation. Counterbalancing these factors is the enormous government interest in enforcing laws which are designed to protect the national revenue and in preventing abuse of privilege of writing bonds.

### 4. Impermissible Retaliatory Act

Plaintiff charges that "there is probably some causal relation and preconceived plan" between the Regional Commissioner's decision and plaintiff's testimony to the United States House of Representatives concerning "corrupt practices of officials in the United States Customs Service." *Plaintiff's Memorandum* at 19–21. The record does not contain any substantiating evidence to this effect. Further, the Regional Commissioner stated in an affidavit that he had no knowledge of any testimony given by plaintiff, rendering improbable that his decision was due to such testimony. *See* Affidavit of Q. Villanueva, paras. 2–6, in *Defendants' Brief.*

### B. *A Threat of Immediate and Irreparable Harm*

In view of plaintiff's chronic failure to avail itself of administrative remedies, any harm plaintiff may suffer upon effectuation of the Regional Commissioner's decision is a consequence of plaintiff's own failings. To grant injunctive relief under the facts of this case is to recompense plaintiff for frustrating orderly administra-

tion of the governing laws. A court should generally refrain from displacing a decision made "by the designated executive branch representative having primary responsibility for dealing with the problem entrusted to him." *S.J. Stile Associates*, 646 F.2d at 526. Further, it is not the case that government action in this case "will put plaintiff completely out of business in the affected region." *Plaintiff's Memorandum* at 2. "Refusal to accept bonds from a surety which is deemed to be non-responsible is a temporary measure.... As soon as the appropriate Customs officer is satisfied that a surety stands ready, willing, and able to resume a normal business relationship with Customs, its bonds will again be accepted." 48 Fed.Reg. 11,032, 11,041 (Mar. 15, 1983).

### C. Public Interest and Balance of Hardships

The public interest is best served by facilitating Customs' effort to uphold the integrity of the Customs Service by enforcement of laws and regulations designed to effectively safeguard national revenue. To this end, the public clearly has a strong interest in ensuring that administrative procedures, which are reasonably calculated to encourage prompt payment of debt obligations to the government, remain unimpaired. While the Court does not question that there may be some adverse business impact to plaintiff upon effectuation of disciplinary measures pursuant to 19 C.F.R. § 113.38, this hardship is overwhelmingly outweighed by the other three factors governing issuance of a preliminary injunction.

### Conclusion

Plaintiff has not made the requisite showing for a preliminary injunction. Specifically, plaintiff has not adequately demonstrated that it will likely succeed on the merits. Further, any harm plaintiff may suffer in the absence of the preliminary injunction is a consequence of plaintiff's own failings. Therefore, plaintiff's motion is denied. For these reasons, the Court grants defendant's cross-motion to dismiss for failure to state a claim upon which relief can be granted. SO ORDERED.

### JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS ORDERED, ADJUDGED and DECREED: that plaintiff's motion for a preliminary injunction is hereby denied; and it is further

ORDERED, ADJUDGED, and DECREED: that the Temporary Restraining Order entered by this Court on January 24, 1989 is hereby dissolved; and it is further

ORDERED, ADJUDGED, and DECREED: that defendants' motion to dismiss is granted, and the action is dismissed.